1998 ND 20

Kevin HUST, Claimant and Appellant

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
Appellee,

and

**Moos Trucking, Respondent.**

Civil No. 970236.

Supreme Court of North Dakota.

Jan. 21, 1998.

Dean J. Haas, of Dietz, Little & Haas, Bismarck, for claimant and appellant.

Stephen D. Easton, Special Assistant Attorney General, for appellee.

SANDSTROM, Justice.

[¶ 1]Kevin Hust appealed from a judgment affirming a Workers Compensation Bureau decision denying him benefits. We conclude the Bureau's findings Hust was substantially impaired by his voluntary consumption of alcohol when he was injured and his alcohol-induced impairment was a cause of the injury are supported by a preponderance of the evidence, and we affirm.

I

[¶ 2]Hust and Clint Ennen were over-the-road truck drivers employed by Moos Trucking in Bismarck. It was snowing on the morning of January 17, 1996, when Hust and Ennen left Bismarck to drive a truckload of lumber to Chicago, Illinois. Ennen drove and the men stopped in Steele and called back to Moos Trucking to inform their employer the weather was poor and the trip should be canceled. Doug Moos, owner of the business, told them to continue because he believed they could drive out of the snowstorm. When they reached Tappen, they stopped again. According to Hust, visibility was bad because of the snow, and the highway was icy. They continued on, arriving in West Fargo about 4 p.m., approximately four hours after they left Bismarck.

[¶ 3]Hust and Ennen parked the truck at the West Fargo Truck Stop and decided to spend the night in the truck to wait out the inclement weather. Ennen called Moos in Bismarck and told him about the weather and their plans. Moos said he would talk with another employee who was in Minnesota traveling west and tell them whether to proceed. Hust and Ennen nevertheless decided it was too dangerous to continue the trip. They left the truck stop and walked about one block to the M & J Restaurant and Saloon (M & J).

[¶ 4]According to Hust, they walked to the M & J about 4:30 p.m. to eat. Learning the restaurant in the M & J had not yet opened, they went into the saloon and ordered drinks. Moos contacted them at the M & J and told them to press onward because he learned weather and road conditions were better east of Fargo. Ennen told Moos they had been drinking, so Moos told them to "stay put."

[¶ 5]Ennen, Hust, and two other stranded drivers sat at a table and ordered several rounds of drinks. Hust eventually drank between six and nine whiskey drinks. Terri Maddux, the manager of the saloon, "cut them off" from further alcohol purchases be-

cause of their loud tone. They then went into the restaurant and, instead of ordering food, ordered more drinks. When the restaurant waitress placed their alcohol order with the bar, Maddux recognized the types of drinks as the ones Hust and Ennen had been ordering, and she refused to fill the drink order. When the waitress told them they would only be served food and not alcohol, Hust and Ennen became angry. Hust decided he wanted to leave the restaurant.

[¶ 6]Maddux then ordered Hust and Ennen to leave the premises. According to Ennen, he "had to help [Hust] put his jacket on because he was pretty inebriated." As they were leaving, Maddux noticed Hust was walking with a limp and the men almost fell on the way to the entryway to the premises. In the entryway, snow from the storm had melted under a rug, creating an icy, slushy mixture. When Hust stepped on the rug, it slid out from beneath him and he fell, injuring his left knee. He was taken to the hospital, where the emergency room physician diagnosed him as having "[l]eft knee strain" and "[a]cute alcohol intoxication."

[¶ 7]Hust applied for workers compensation benefits. Following a hearing, the Administrative Law Judge (ALJ) found Hust was impaired by alcohol and the impairment was a cause of his injury, thus disqualifying him from benefits. The ALJ also found Hust was not entitled to benefits because his slip and fall did not occur in the course of his employment. The Bureau adopted the ALJ's findings and conclusions, and the district court affirmed the Bureau's decision.

[¶ 8]The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–15, and 65–10–01. Hust's appeal was timely under N.D.R.App.P. 4(a), and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–21.

## II

[¶ 9]We review the Bureau's decision, not the decision of the district court, and we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Lucier v. North Dakota Workers Comp. Bureau*, 556 N.W.2d 56, 59 (N.D.1996); N.D.C.C. § 28–32–19. In evaluating the Bureau's findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau, but we determine only whether the Bureau reasonably reached its factual conclusions from the weight of the evidence on the entire record. *Dean v. North Dakota Workers Comp. Bureau*, 1997 ND 165, ¶ 14, 567 N.W.2d 626.

## A

[¶ 10]For workers compensation purposes, a "compensable injury" does not include "[a]ny injury caused by the use of intoxicants ..." N.D.C.C. § 65–01–02(9)(b)(2) (1995). If the Bureau or an employer claims an employee is not entitled to workers compensation benefits because the "employee's injury was caused by the employee's ... voluntary impairment caused by use of alcohol ...," the Bureau or employer bears the burden of proving "such exemption or forfeiture...." N.D.C.C. § 65–01–11 (1995).

[¶ 11]The Bureau interpreted the statutory term caused by to mean the Bureau must prove Hust's alcohol-induced impairment was a proximate cause of his injury. In reaching this conclusion, the ALJ relied on 2 *Larson's Workers' Compensation Law* § 34.33(a), at pp. 6–111—6–112 (1997) (footnote omitted) (*Larson*), where the author states with respect to workers compensation intoxication statutes, "[w]hen a statute says merely 'caused by' or 'due to,' this can refer neither to remote cause nor to sole cause. It must mean proximate cause."

[¶ 12]As summarized in 2 *Larson* § 34.31, at p. 6–105, intoxication statutes vary widely "in the manner in which the requisite causal connection between the intoxication and the injury is described. This causal requirement ranges all the way from none whatever to sole causation." For workers compensation purposes in this jurisdiction, we generally have not used tort labels like "proximate cause" to describe a necessary causal relationship. For example, we have said in a long line of cases a worker's

employment need not be the sole cause of injury to be compensable. Rather, it is sufficient if a work condition, activity, or work-related stress is a "substantial contributing factor" to the claimant's injury. *See, e.g., McDaniel v. North Dakota Workers Comp. Bureau,* 1997 ND 154, ¶ 12, 567 N.W.2d 833; *Lang v. North Dakota Workers Comp. Bureau,* 1997 ND 133, ¶ 15, 566 N.W.2d 801; *Holtz v. North Dakota Workers Comp. Bureau,* 479 N.W.2d 469, 471 (N.D.1992); *Sloan v. North Dakota Workers Comp. Bureau,* 462 N.W.2d 638, 641 (N.D.1990); *Darnell v. North Dakota Workers Comp. Bureau,* 450 N.W.2d 721, 725 (N.D.1990); *Syverson v. North Dakota Workmen's Comp. Bureau,* 406 N.W.2d 688, 690 (N.D.1987); *Satrom v. North Dakota Workmen's Comp. Bureau,* 328 N.W.2d 824, 831 (N.D.1982).

[¶ 13]Under the circumstances, however, it is unnecessary for us to decide whether the Bureau had the burden of proving Hust's alcohol-induced impairment was a proximate cause of, or a substantial contributing factor to, his injury because, under either standard, the record supports the Bureau's decision.

### B

■ [¶ 14]The preponderance of the evidence in this case supports the Bureau findings Hust was substantially impaired by his voluntary consumption of alcohol when he was injured and this alcohol-induced impairment was either a proximate cause of, or a substantial contributing factor to, his injury.

[¶ 15]Hust's own testimony supports a finding he was alcohol-impaired at the time of the injury. Hust testified he had eaten nothing all day except two slices of toast for breakfast, and peanuts and pop during the drive to West Fargo. Hust began drinking on a virtually empty stomach and admitted to consuming six or seven whiskey drinks before Maddux stopped serving him, probably about 9 p.m. Hust and Ennen acknowledged Hust became loud in the saloon and was asked to quiet down. Ennen had told a Bureau investigator Hust was "getting pretty rowdy," "[h]e was spilling his drinks. He hit the table and all the drinks would spill and then they finally kicked us out." Ennen further said he had to help Hust put his jacket on before they left. We conclude the Bureau could reasonably find from the weight of the evidence on the entire record Hust was substantially impaired by alcohol at the time of the injury.

■ [¶ 16]The evidence also supports a finding Hust's alcohol impairment was either a proximate cause of, or a substantial contributing factor to, his injury. Hust was substantially impaired by alcohol. It is undisputed the entryway had become very slippery because of snow blowing in under the rug when the door would be opened. But it is also undisputed no other M & J patrons, either alcohol-impaired or unimpaired, slipped and fell while entering or leaving the premises. These facts permit a strong inference alcohol impairment was a cause of the injury. The Bureau could reasonably find from this evidence Hust's alcohol impairment, although not a sole cause, was either a proximate cause of, or substantial contributing factor to, his injury.

[¶ 17]Hust relies on numerous cases from other jurisdictions to support the argument his alcohol impairment was not a cause of his injury. No useful purpose would be served by discussing these cases in detail. The vast majority are appellate court affirmances of lower court or compensation bureau findings alcohol impairment was not a cause of the injury. These cases merely recognize the deferential treatment appellate courts usually give to findings of fact of an administrative body. The only case cited by Hust involving an appellate court reversal of a finding intoxication caused a claimant's injury is *O'Neal v. Home Ins. Co.,* 404 So.2d 1355 (La.Ct.App. 1981). *O'Neal* at 1357, is distinguishable, not only on its facts, but because the appellate court determined the burden had been placed incorrectly on the claimant "to prove a cause of the accident other than intoxication." The only evidence on how the accident occurred was the claimant's testimony. The employer called no witnesses. The court therefore concluded the employer "failed to prove the accident and injuries were caused by plaintiff's intoxication...." *O'Neal* at 1358. The Bureau in this case did not improperly place the burden of proof on Hust and presented evidence to support its findings of fact.

[¶ 18]We conclude the Bureau's findings Hust was substantially impaired by his voluntary consumption of alcohol when he was injured and his alcohol-induced impairment was a cause of the injury are supported by a preponderance of the evidence.

### III

[¶ 19]As an alternate ground for denying Hust benefits, the Bureau found Hust's principal activity at the M & J was consumption of alcohol, a personal activity outside the scope of his employment as a truck driver. Hust asserts this finding is not supported by a preponderance of the evidence. Because we have affirmed the Bureau's finding Hust's alcohol impairment was a cause of the injury, thus exempting him from receiving benefits stemming from this incident, it is unnecessary for us to address the scope of employment issue.

### IV

[¶ 20]The judgment is affirmed.

[¶ 21]VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.